UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY KOBERSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   1:20-cv-00902 |
| | ) | |
| vs. | ) | |
| | ) | |
| CENTRUM PROPERTIES, INC.; LAURENCE | ) | |
| ASHKIN; JOHN MCLINDEN; ARTHUR | ) | |
| SLAVEN; JANE SLAVEN; and McLINDEN | ) | |
| HOLDINGS, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The plaintiff, Mary Koberstein ("Ms. Koberstein"), by counsel, submits the following

Complaint against Centrum Properties, Inc., an Illinois corporation ("Centrum"), Laurence Ashkin

("Mr. Ashkin"), Arthur Slaven ("Mr. Slaven"), John McLinden ("Mr. McLinden"), Jane Slaven

("Ms. Slaven"), and McLinden Holdings, L.L.C., an Illinois limited liability company ("McLinden

Holdings" and collectively with Centrum, Mr. Ashkin, Mr. Slaven, Mr. McLinden and Ms. Slaven,

sometimes hereinafter referred to individually as a "Defendant" and collectively as "Defendants").

In support of her claims, Ms. Koberstein alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for breach of contract pertaining to an Agreement ("Agreement")

and Global Assignment of LLC Interests ("Global Assignment") between Ms. Koberstein and

Defendants, demand for damages and specific performance of the terms of the Agreement, and

declaratory judgment with respect to Defendants' duty to defend and indemnify Ms. Koberstein.

2.      Following a now-familiar pattern, Centrum and its officers Mr. Slaven, Mr. Ashkin,

and Mr. McLinden have once again failed to honor their obligations to a former employee and

colleague. In 2011, a Cook County Court entered a judgment of more than $11.5 million against Centrum for failing to pay former employee Jennifer Arons in accordance with her compensation agreement. After Centrum failed to satisfy the judgment, Ms. Arons filed a follow up lawsuit in 2013 to collect. This second lawsuit ensnared Ms. Koberstein, the former general counsel of Centrum, due to Centrum's improper decision to attribute over $3 million in write-offs to "bad debt" of Ms. Koberstein.

3.      Pursuant to her compensation agreement with Centrum, beginning around 2003, Ms. Koberstein received a three percent (3%) participatory interest in certain Centrum limited liability companies. Centrum agreed to contribute the capital for Ms. Koberstein's participatory interests, and she had no obligation to pay it back. When Ms. Koberstein retired from Centrum in 2008, she owned interests in more than ninety (90) Centrum-related limited liability companies. The year before Ms. Koberstein retired, Centrum disputed the extent of its obligations to her under her compensation agreement, claiming it had the right to offset distributions owed her from individual limited liability company projects that generated profits with losses incurred by other limited liability companies.

4.      Wishing to find an amicable resolution, Ms. Koberstein entered into the Agreement with Centrum and the other Defendants in 2010. Pursuant to the Agreement and Assignment, Ms. Koberstein transferred nearly all of her participatory interests to Centrum-related parties. The Agreement resolved all then-existing disputes among Ms. Koberstein and Defendants, such as the propriety of consolidating profits and losses across Ms. Koberstein's interests. The Agreement broadly required the Defendants to defend and indemnify Ms. Koberstein in any disputes related to the participatory interests she relinquished and transferred back. The Agreement made no

US.126676893.01

mention of any loans or other amounts owed by Ms. Koberstein, nor could it since Ms. Koberstein was not indebted to Centrum in any fashion.

5.      Nevertheless, after Ms. Koberstein and Defendants entered into the Agreement, under the direction of Mr. Slaven and Mr. McLinden, Centrum improperly wrote-off over $3 million as "bad debt" expressly attributed to Ms. Koberstein related to capital advances for her participatory limited liability company interests.  These improper write-offs served as a basis for Ms. Arons to sue Ms. Koberstein in 2013, under a theory that the "bad debt" write-offs constituted fraudulent transfers of Centrum assets to Ms. Koberstein, assets that Ms. Arons alleged should have been used to pay her judgment against Centrum.  Thus, Centrum and some of Defendants are directly responsible for Ms. Koberstein's involvement in the 2013 lawsuit, which falls squarely within the defense and indemnity provisions in the Agreement.

6.      Nevertheless, the Defendants have steadfastly refused to reimburse Ms. Koberstein for the substantial fees she has expended defending herself over more than five years of litigation. Additionally, although Ms. Koberstein was dismissed from the 2013 litigation in early 2019, the dismissal order remains interlocutory and thus the risk remains that Ms. Koberstein could be brought back into the case and become subject to a judgment.

7.      The Defendants must honor the straightforward obligations in the Agreement to defend and indemnify Ms. Koberstein.  Accordingly, Ms. Koberstein seeks monetary relief in the form of reimbursement for fees expended, a declaratory judgment requiring the Defendants to comply with the terms of the Agreement, and an award of fees incurred in this lawsuit.

## **PARTIES**

8.      Ms. Koberstein is a citizen and resident of the State of California.

US.126676893.01

9.     Centrum is and at all material times was an Illinois corporation with its principal place of business at 225 W. Hubbard Street, Chicago, Illinois 60654.

10.    Mr. Ashkin is a citizen and resident of the State of Arizona.

11.    Mr. McLinden  is a citizen and resident of the State of Illinois.

12.    Mr. Slaven is a citizen and a resident of the State of Florida.

13.    Ms. Slaven is a citizen and a resident of the State of Florida.

14.    McLinden Holdings is and at all material times was an Illinois limited liability company with its principal place of business at 225 W. Hubbard Street, Chicago, Illinois 60654.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Ms. Koberstein and the Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

16.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(2) because a substantial part of the events giving rise to the claims in this action occurred in this judicial district and because the Agreement at issue in this action provides for the use of Illinois law.

## ALLEGATIONS COMMON TO ALL COUNTS

### A.  Centrum Employs Ms. Koberstein And Ms. Arons And Fails To Compensate Them Both In Accordance With Their Compensation Agreements.

17.    Mr. Slaven and Mr. Ashkin formed Centrum in 1980 as a full-service real estate development company which grew to be well-respected for its expertise in residential and commercial development, finance, construction management, sales, marketing and property management.

18.    Centrum hired Ms. Koberstein as General Counsel in late 1998.  She reported directly to Mr. Slaven, Mr. Ashkin, and Mr. McLinden, who were the officers and controlling

US.126676893.01

principals of Centrum from that time until about mid-2010 when Mr. Ashkin stepped back from management.

19.     Ms. Koberstein's initial compensation package at Centrum consisted of a salary and bonus.   During 2002-2003, Ms. Koberstein and Centrum agreed on terms that modified Ms. Koberstein's compensation package.

20.     Under her new compensation agreement, Ms. Koberstein was granted a three percent (3%) participatory membership interest in profits generated by limited liability companies ("LLCs") that were formed to own most of Centrum's real estate projects.   In exchange for the grant of participatory membership interests, Ms. Koberstein's salary was capped and her bonus was eliminated.   *See* Affidavit of Mary Koberstein, dated February 11, 2016, a true and correct copy of which is attached hereto as Exhibit A, ¶¶4-7, and Affidavit of Arthur Slaven, dated February 16, 2016, a true and correct copy of which is attached hereto as Exhibit B, ¶¶3-4. Ms. Koberstein was not required to contribute capital to the LLCs in which she became a member. Ms. Koberstein did not borrow money for capital contributions from Centrum.   Centrum agreed to put up the capital and Ms. Koberstein had no obligation to pay it back.

21.     While Ms. Koberstein was employed at Centrum, Centrum hired Jennifer Arons ("Ms. Arons") as senior vice president of marketing and sales for its residential projects in Illinois and elsewhere.   Ms. Koberstein had no role in supervising Ms. Arons' activities.   Mr. Slaven, Mr. Ashkin and Mr. McLinden did not disclose Ms. Arons' employment agreement to Ms. Koberstein or ask her to review it before it was executed.

22.     On February 1, 2008, Centrum fired Ms. Arons in the midst of a dispute between the two regarding Centrum's accounting of the compensation Ms. Arons was entitled to receive under her employment agreement.   On July 7, 2008, Ms. Arons filed a lawsuit against Centrum

US.126676893.01

related to that dispute in the Circuit Court of Cook County captioned *Arons v. Centrum Properties, Inc., et al.*, Case No. 08-L-7322 ("Arons I").

23. In November 2008, Ms. Koberstein voluntarily retired from full-time employment with Centrum and moved to Maine.[1] At that time, Ms. Koberstein was a member of more than ninety (90) Centrum-related limited liability companies. Not unlike Ms. Arons, at the time of her departure Ms. Koberstein had differences with Centrum regarding the terms of her compensation agreement, specifically Centrum's accounting of compensation due Ms. Koberstein with respect to her LLC interests.

**B. In 2010 Ms. Koberstein and Defendants Enter Into The Agreement and Global Assignment of Membership Interests That Resolves Disputes Concerning Ms. Koberstein's Limited Liability Company Membership Interests.**

24. Prior to Ms. Koberstein's retirement, at some point in 2007, Centrum Accounting Department staff presented Ms. Koberstein with Centrum's version of a reconciliation of capital accounts and distributions related to her three percent (3%) participating LLC membership interests.

25. This reconciliation was the first time that Ms. Koberstein became aware that Centrum, Mr. Slaven, Mr. McLinden, and Mr. Ashkin asserted a right to offset aggregated losses from non-performing real estate projects against distributions owed to Ms. Koberstein with respect to her three percent (3%) participating profit interest in other LLCs.

26. Ms. Koberstein never agreed to this arrangement at the time her compensation was modified, and it was not documented in the LLC agreements under which she was a member[2] or

---

[1] After her resignation, Koberstein continued to work for Centrum on a contract basis until early 2018.

[2] Ms. Arons and Centrum also disagreed about offsetting profits with losses in Arons I. Ruling in Arons I, Judge Mulroy found that "[t]he operating agreements for the Centrum LLCs do not contain provisions permitting the managers to withhold distributions due from one LLC to offset losses or anticipated losses from another LLC, or to reinvest or otherwise determine the disposition of distributions to be paid to the LLC members." Exhibit G, Finding

US.126676893.01

in any other document. Ms. Koberstein and Centrum never discussed this possibility or Centrum's accounting practices related to Ms. Koberstein's LLC interests years earlier when they agreed to modify her compensation agreement.

27.    Ms. Koberstein raised these concerns and others regarding Centrum's reconciliation with Mr. Slaven and Mr. McLinden but the three did not resolve them during the term of Ms. Koberstein's employment at Centrum.

28.    Ms. Koberstein valued her continuing professional and personal relationship with Mr. Slaven, Mr. Ashkin, and Mr. McLinden and wanted to resolve the issues related to her LLC interests and put the matter behind them. After she moved to Maine, Ms. Koberstein contacted Mr. Slaven and Mr. McLinden and asked if they could work to resolve their differences and they agreed.

29.    During the course of their negotiation, Mr. Slaven made a statement to the effect that according to Centrum's analysis, if they did not offset profits distributions due to Ms. Koberstein with aggregated losses, Ms. Koberstein would have been entitled to be paid approximately an additional $360,000.00.

30.    On that basis and to settle their dispute, Ms. Koberstein, Mr. Slaven, and Mr. McLinden agreed that Ms. Koberstein would retain five of her LLC interests with aggregate capital accounts of roughly $360,000.00 (as defined in the Agreement, the "Retained Interests"). With respect to these Retained Interests, Ms. Koberstein and Defendants agreed that Ms. Koberstein would be recognized as a capital contributing member, entitled to return of her capital, plus interest and distributions on the same basis and at the same time as all other contributing members.

---

of Fact 105. Generally, the operating agreements for the Centrum LLCs provide that if a member does not contribute capital, another member may elect to advance the money as either a contribution to capital that dilutes the membership interest of the non-contributing member, or as a loan, *not to the non-contributing member*, but as a loan *to the company*.

US.126676893.01

31.     Ms. Koberstein also agreed to relinquish and assign over ninety Assigned Interests (the Category A Companies and the Category B Companies, all as defined in the Agreement), to persons or entities Mr. Slaven and Mr. McLinden designated.

32.     The parties documented this resolution in the Agreement and Global Assignment executed as of December 27, 2010.  True and correct copies of the Agreement and the Global Assignment are attached hereto as Exhibit C and Exhibit D respectively.  *See also* Exhibit A, ¶¶14-17, 19; Exhibit B, ¶7.

33.     In the incorporated preambles to the Agreement, Ms. Koberstein and Defendants acknowledged their desire to resolve issues "with respect to capital accounts, the propriety of consolidating profits and losses across the Category A Companies and the Category B Companies, the timing and payment of distributions and other matters related to the Category A Companies, the Category B Companies and the Retained Interests . . . and the terms of the Operating Agreements thereof (collectively, the 'Company Matters')."

34.     Pursuant to paragraph 5(b) of the Agreement, the Defendants released Ms. Koberstein, the "Seller" under the Agreement, from any and all of the "Company Matters," as well as all claims related to her employment at Centrum, and specifically claims related to the Assigned Interests (the Category A Companies and Category B Companies), including, without limitation, claims related to the obligation to return capital and the repayment of any purported loans:

> (b) Except as otherwise specifically provided in this Agreement, Centrum, Purchaser, Slaven, McLinden and Ashkin hereby unconditionally and irrevocably releases Seller from any and all Company Matters and all claims or rights which they individually may  have against Seller and arising under or in any manner related to M. Koberstein's employment at Centrum, all claims or rights arising in any manner related to the Category A Companies, the Category B Companies or the operation, activities and business thereof including but not limited to any and all obligations for the return of capital, the distribution of profits or cash flow from

8

any source, the repayment of any loans or the payment of any interest thereon, payment of any amounts required under any indemnification of any guarantors under the respective Operating Agreements, the payment of fees, the reimbursement of expenses and any other such obligations of any kind or nature whatsoever, provided that the foregoing release shall not include, and Seller shall not be released from any obligation or liability under this Agreement or any grossly negligent, reckless or intentionally wrongful acts or omissions that give rise to a cause of action under or by virtue of any Operating Agreement or otherwise. Centrum, Mc Linden, Slaven and Ashkin hereby join in and execute this Agreement for the purpose of agreeing to be bound by the release of Seller set forth in this Paragraph 5(b).

35.     Pursuant to paragraph 6 of the Agreement, Defendants indemnified and agreed to defend and hold Ms. Koberstein harmless from and against any and all losses, liabilities, damages, costs, or expenses arising out of her status as a member in or in any manner related to the Assigned Interests (the Category A Companies and the Category B Companies) except as related to grossly negligent, reckless or intentionally wrongful acts of Ms. Koberstein:

6.     Indemnification of Seller. Except to the extent specifically otherwise provided in this Agreement, Purchaser hereby indemnifies and agrees to defend and hold harmless Seller from and against any loss, liability, damage, cost or expense (including reasonable attorneys' fees and litigation costs) sustained or incurred by Seller arising out of Seller's status as member in the Category A Companies and the Category B Companies, or in any manner relating to the Category A Companies and the Category B Companies and their respective activities and affairs, including their respective liabilities and obligations, whensoever arising, to the extent that such liabilities and obligations are not the result of grossly negligent, reckless or intentionally wrongful acts or omissions by Seller. Centrum, McLinden, Slaven and Ashkin hereby join in and execute this Agreement for the purpose of agreeing to indemnify Seller as set forth in this Paragraph 6.

36.     Since the effective date of the Agreement, Ms. Koberstein paid all capital calls issued to her with respect to the Retained Interests and interests that flowed out of capital restructures or reorganizations of her Retained Interests, consistent with the terms applicable to the Retained Interests. Exhibit C, ¶7.

37.     Pursuant to paragraph 4 of the Agreement, the Defendants represent and warrant to Ms. Koberstein that as of the date of the Agreement, they had "disclosed to [Ms. Koberstein] all

information that would be material to prudent sellers and owners of interests such as the Category A Companies, Category B Companies and Retained Interests and have not omitted to disclose any such material information."

38. The comprehensive recitals in the Agreement contain no reference to or acknowledgement of any debt whatsoever that Ms. Koberstein owed Centrum, or any Defendant. The Agreement contains no reference to the manner by which Centrum was accounting for capital advanced on behalf of Ms. Koberstein, let alone that Centrum fully intended to write-off "bad debt" that Centrum would expressly attribute to Ms. Koberstein. Nor could it because no loan ever existed or was documented by and between Ms. Koberstein and Centrum as Ms. Koberstein never had any personal obligation to repay Centrum for capital advanced on her behalf.

39. Nevertheless, effective as of four (4) days after execution of the Agreement, Centrum recorded millions of dollars of bad debt in its general ledgers that Centrum expressly attributed to Ms. Koberstein. These accounting entries were described as "Write-Off Koberstein to Bad Debt" in the amounts of $2,716,031.81 as of December 31 2010, and $393,066.70 as of December 31 2011. *See* Exhibit E and Exhibit F attached hereto, Accounts 2222-0000 and 3880-0000, "Write-Off Koberstein to Bad Debt."[3]

40. When the Agreement was executed, it was a material omission to fail to disclose to Ms. Koberstein that notwithstanding her relinquishment of over ninety of her LLC interests and express terms of the Agreement that released her from all claims related to her employment, Centrum fully intended to continue to maintain "Koberstein" accounts in the Centrum general ledgers that identified Ms. Koberstein as ostensibly indebted to Centrum for millions of dollars of

---

[3] Exhibits E and F were included among exhibits Ms. Arons filed in support of a Motion to Accept Offer of Proof in Arons II in December, 2018. See paragraphs 50-57 *infra* for facts pertaining to Arons II.

US.126676893.01

capital advances related to all of the Assigned Interests and the Retained Interests that would serve as the basis for two Centrum bad debt tax write-offs.

41.     Notwithstanding the binding effect and terms of the Agreement, Centrum continued to characterize the capital advances it made for Ms. Koberstein as a loan tied to Ms. Koberstein in Centrum's general ledgers at least through 2011.

42.     There are no notations or any other indication in the Centrum general ledgers that the capital advances made for Ms. Koberstein were "non-recourse" loans to Ms. Koberstein or that the LLC interests they pertained to had been assigned to Ms. Slaven and McLinden Holdings as of December 27, 2010.

43.     In a sworn statement, Mr. Slaven affirmed that Ms. Koberstein had no personal liability to repay amounts Centrum advanced on her behalf.  Exhibit B, ¶¶3-4.  Mr. Slaven also stated that after consulting with its outside accountants, Centrum made the decision to take the 2010 and 2011 "bad debt" write-offs.  The millions of dollars of Centrum "bad debt" write-offs ultimately flowed to the benefit of Mr. Slaven and Mr. McLinden, who were each 50% shareholders of Centrum at the time.

44.     Centrum never issued Ms. Koberstein a 1099-C that reports cancellation of debt income to the Internal Revenue Service with respect to the 2010 and 2011 write-offs that Centrum entered in the Centrum ledgers and claimed on its income taxes.  Centrum never informed Ms. Koberstein verbally or in writing that it took the write-offs.

45.     Ms. Koberstein was motivated to enter into the Agreement "to resolve any and all issues related to [her] LLC interests with [her] former employer, simplify [her] life in semi retirement and move on."  Exhibit A, ¶13.  Due to the decision of Mr. Slaven, Mr. McLinden and

11

Centrum to attribute "bad debt" to Ms. Koberstein and then take the write-offs, that did not prove to be the case.

### C. **Ms. Arons Obtains $11.5 Million Judgment Against Centrum Related To Its Improper Accounting Of Her Compensation.**

46.    On December 22, 2011, after a several-day trial that spanned the period between the end of September and beginning of November, Ms. Arons was awarded an $11,544,199.00 judgment against Centrum for breach of contract related to her employment agreement in the Arons I litigation.  *See* Opinion and Judgment Order, Case No. 08 L 73212, Honorable Thomas R. Mulroy, December 22, 2011, a true and correct copy of which is attached hereto as Exhibit G. Ms. Koberstein had no involvement in the trial of Arons I, as a party or witness.

47.    To enforce her $11,544,199.00 judgment against Centrum, Ms. Arons filed motions for turnover of assets in supplementary proceedings in 2012, through which she was able to collect only about $100,000 from Centrum.

48.    During the supplementary proceedings, Centrum produced to Ms. Arons the 2010 and 2011 general ledgers that documented the "Write-Off Koberstein To Bad Debt."

49.    As noted, the summary of Account 2222-0000 in the Centrum general ledgers classified $2,716,031.31 as "Write off Koberstein to Bad Debt" as of December 31, 2010.  Centrum wrote off an additional $393,066.70 of bad debt attributed to Ms. Koberstein in 2011.

50.    In August 2013, having only recovered a small fraction of her judgment against Centrum, Ms. Arons commenced a separate lawsuit in the Circuit Court of Cook County, seeking to collect on her judgment against Centrum ("Arons II").  *See* Second Amended Complaint, Case 2013-L-8921, a true and correct copy of which (excluding exhibits) is attached hereto as Exhibit H. Ms. Arons named Ms. Koberstein as a defendant in Arons II, alleging that the bad debt write-offs evidenced a legitimate debt that Ms. Koberstein owed Centrum and constituted fraudulent transfers

US.126676893.01

of Centrum assets to Ms. Koberstein, and thus sought to recover the more than $3 million from Ms. Koberstein in satisfaction of Ms. Arons' 2011 judgment against Centrum.

51.     Ms. Koberstein was not privy to Centrum's books and records while employed at Centrum or afterward.  Ms. Koberstein did not know that Centrum entered write-offs in its 2010 and 2011 ledgers attributed to Ms. Koberstein as "bad debt" until Ms. Koberstein was served with the Summons and the Complaint in Arons II.

52.     Ms. Koberstein never owed Centrum any money, she had resolved all issues regarding her LLC interests with Centrum and the other Defendants nearly three years earlier, and that she had nothing to do with Centrum's dispute with Ms. Arons.

53.     The "Write-Off Koberstein To Bad Debt" entries in Accounts 2222-0000 and 3880-0000 of Centrum's 2010 and 2011 general ledgers provided the basis for Ms. Arons to ensnare Ms. Koberstein in Ms. Arons' efforts to collect on her $11,544,199.00 judgment against Centrum.

54.     Citing to write-offs in Centrum's "books and records," Ms. Arons alleged that Ms. Koberstein owed a legitimate debt to Centrum that was written off without consideration, and therefore, Ms. Koberstein[4] was a fraudulent transferee of Centrum assets:

> "The amounts due from the Centrum Insiders Koberstein, Stocking and Tucker . . . arose primarily from advances made by Centrum Properties (or an affiliated Centrum LLC but recorded as a debt due Centrum) . . . for capital contributions due from them for their membership interests in certain Centrum LLCs . . . these Defendants were allowed to keep the money without having to pay back their full legitimate debt to Centrum."

> " . . . the Controlling Defendants merely 'wrote-off' millions of dollars of debt owed to Centrum by the Centrum Insiders without receiving any value whatsoever and never intending to otherwise pursue the debt."

---

[4] In Arons II, Ms. Arons sometimes refers to Koberstein as a "Centrum Insider."  In fact, Koberstein was never an "Insider" within the meaning of the Uniform Fraudulent Transfer Act, and had left employment at Centrum more than two years before the write-offs.

US.126676893.01

"With knowledge of the Controlling Defendants' fraudulent scheme [the Centrum Insiders] accepted the release of millions of dollars [sic] worth of debts due and owing to Centrum Properties as well as millions of dollars of distributions from Centrum Properties and its related LLCs."

Exhibit H, ¶¶34, 154, 212 (emphasis added). *See also id.*, ¶¶19, 33-34, 153-156, 211-214.

55.     Ms. Arons sought over $3,109,098.00 in compensatory damages from Ms. Koberstein related to the write-offs, plus the value of unidentified distributions Ms. Arons alleged were improperly paid to Ms. Koberstein while the alleged "legitimate debt" was outstanding, plus prejudgment interest.

56.     Ms. Arons' allegations made it plain that the write-offs related to capital advances for Ms. Koberstein's LLC interests.

57.     Given the sheer number of LLC interests Ms. Koberstein held prior to December 27, 2010, it is apparent that most of the capital contributions that Ms. Arons now incorrectly alleged constituted legitimate debt, had to relate in some fashion to Ms. Koberstein's interests in the Category A Companies and Category B Companies that she assigned to Ms. Slaven and McLinden Holdings prior to the write-offs.

58.     The projects referenced in the description column of account "2222-0000 Mary Koberstein" for 2010 in the Centrum general ledgers in <u>Exhibit E</u> are shorthand limited liability company legal names or common names for projects that were used and generally understood within Centrum.[5]

59.     A comparison between the general ledger entity descriptions in <u>Exhibit E</u> and the entities listed as the Category A Companies and Category B Companies in Exhibits A and B in the

---

[5] Because of the growing magnitude of real estate projects at Centrum, at one point while Koberstein was still employed at Centrum, the Centrum Legal Department prepared a written "field guide" that listed each project by legal entity name and common name in order to keep them straight.

Global Assignment evidences that many of the general ledger descriptions closely correspond to legal names of Category A Companies and Category B Companies.

60.     With one exception[6], Category A Companies and Category B Companies comprise all the entities referenced in the descriptions for Ms. Koberstein account 2222-0000 on page 99 of the Centrum 2010 General Ledger set forth in <u>Exhibit E</u>.

61.     As officers and controlling principals of Centrum, Mr. Slaven, Mr. Ashkin and Mr. McLinden oversaw the activities of Centrum's internal accounting department. Mr. Slaven, Mr. Ashkin and Mr. McLinden also consulted and interacted with the outside accounting firm that prepared income tax filings for Centrum and its related LLCs.

62.     Mr. Slaven and Mr. McLinden know the true facts that form the basis for the amounts of the 2010 and 2011 bad debt write-offs that Centrum claimed and wrote off as bad debt attributed to Ms. Koberstein.

63.     Mr. Slaven and Mr. McLinden know precisely which projects and LLCs are referred to in the description column in account "2222-0000 Mary Koberstein" in the Centrum general ledgers.

64.     Mr. Slaven and Mr. McLinden know that a preponderance of the $3,109,098.52 "bad debt" that Centrum attributed to Ms. Koberstein and wrote off in 2010 and 2011 is based on capital advances related to Ms. Koberstein's interests in the Category A Companies and the Category B Companies.

65.     Mr. Slaven and Mr. McLinden also know how much of the 2010 and 2011 "bad debt" write-offs are based on capital advances for Ms. Koberstein's Retained Interests in which she was acknowledged to be a full capital contributing member.

---

[6] The $1,267.35 debit for "Centrum SEB II To Capital" relates to Koberstein's Retained Interest in 10 S. Randall, commonly referred to as the Algonquin Gas Station project.

US.126676893.01

66.     Defendants know and agree that Ms. Koberstein never had any personal obligation to repay Centrum for amounts advanced on her behalf with respect to her LLC interests.

67.     Defendants know that there is not and never was any document by and between Centrum and Ms. Koberstein that evidences any debt whatsoever that Ms. Koberstein owed Centrum for capital advanced on her behalf or for losses incurred on non-performing real estate projects.

68.     Defendants know that the write-offs did not transfer a Centrum asset to Ms. Koberstein because no bona fide debt ever existed between Ms. Koberstein and Centrum that was forgiven or written off for less than was owed.

69.     Defendants know that they did not inform Ms. Koberstein or the IRS of the 2010 and 2011 write-offs when Centrum took them and claimed deductions on Centrum's income taxes.

70.     Defendants know that the fraudulent transfer allegations Ms. Arons brought against Ms. Koberstein in Arons II are false and have no basis in fact.

71.     Defendants know that Koberstein was not a willing participant in a fraudulent scheme.

72.     Defendants know that Ms. Koberstein is an innocent party who had nothing to do with the write-offs and that the allegations Ms. Arons brought against Ms. Koberstein in Arons II were not the consequence of any negligence or any intentional act or wrongful act or omission of Ms. Koberstein.

73.     Under the Agreement, there was no basis for Centrum to expressly attribute bad debt to Ms. Koberstein; she never owed Centrum any money in the first instance, Ms. Koberstein and Defendants had settled all issues related to capital advances for her LLC interests and all

US.126676893.01

Defendants had released Ms. Koberstein from all claims related to her employment and specifically to any claims related to return of capital and the Assigned Interests.

74.     As a defendant in Arons II, Ms. Koberstein found herself in a conflicted position due to the fact that some of the Defendants were obviously involved in the decision to take the "bad-debt" write-offs that triggered Ms. Arons' third party claims against Ms. Koberstein and dragged Ms. Koberstein into the ongoing Centrum-Arons dispute.

75.     All Defendants are Ms. Koberstein's indemnitors with respect to claims related to Ms. Koberstein's prior membership status in the Assigned Interests. All Defendants had released all claims against Ms. Koberstein relating to her employment, including specifically those related to the Assigned Interests and specifically claims related to the return of capital and repayment of any loans.

76.     The possibility clearly existed that Ms. Koberstein and Defendants could become adverse parties under the Agreement and in Arons II.[7] Ms. Koberstein retained Faegre Baker Daniels LLP to defend her in Arons II because of the actual and potential conflicts of interests the Arons II litigation presented between Ms. Koberstein and Defendants.

77.     Over the course of nearly six years of litigation in Arons II, Ms. Koberstein incurred approximately $423,432.37 in legal fees and costs to defend herself against the baseless fraudulent transfer claims Ms. Arons leveled at Ms. Koberstein. In an effort to keep her legal expenses down, Ms. Koberstein actively participated in her defense, researching issues and drafting most of the memoranda in support of motions she filed in Arons II.[8]

78.     Through telephone conversations, email, in person meetings, and formal demand letters, Ms. Koberstein and her attorneys initiated confidential communications with Defendants

---

[7] Centrum, Mr. Slaven, Mr. McLinden, and Mr. Ashkin were also named defendants in Arons II.
[8] The value of Koberstein's legal services is not included in Koberstein's direct expenses.

US.126676893.01

at various times during the course of the Arons II litigation, requesting that Defendants acknowledge their defense and indemnity obligations under the Agreement and their obligation to reimburse Ms. Koberstein for the legal fees and costs she was incurring.

79.     Defendants consistently failed and refused to acknowledge their obligation to reimburse Ms. Koberstein for legal fees or to defend and indemnify her with respect to the fraudulent transfer claims Ms. Arons brought against Ms. Koberstein in Arons II.

80.     In February 2019, Judge James E. Snyder entered an order that dismissed Ms. Arons' claims against Ms. Koberstein and certain other defendants in Arons II.  *See* Order, Case No. 13 L 8921, Honorable James E. Snyder, a true and correct copy of which is attached hereto as <u>Exhibit I</u>.[9]  However, Ms. Koberstein has incurred substantial fees defending herself against allegations that fall squarely within the reimbursement and indemnity provisions of the Agreement and remains subject to a potential judgment and further legal expenditures. Accordingly, she is entitled to monetary relief along with a declaratory judgment requiring the Defendants to honor their obligations under the Agreement.

**COUNT I**
**BREACH OF CONTRACT AS TO THE AGREEMENT REGARDING THE**
<u>**CATEGORY A COMPANIES AND THE CATEGORY B COMPANIES**</u>

81.     Ms. Koberstein incorporates by reference paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.     The Agreement and Global Assignment executed pursuant thereto are valid and enforceable contracts.

83.     Ms. Koberstein has fulfilled all her obligations under the Agreement, including, without limitation, relinquishing her interests in over ninety limited liability companies in which

---

[9] As of the date of filing this Complaint, the 2019 order is interlocutory and remains subject to appeal, and Mr. Slaven, Mr. McLinden and Mr. Ashkin have been dismissed from Arons II.

US.126676893.01

she held membership interests to Defendants Ms. Slaven and McLinden Holdings, and paying all capital calls issued to her with respect to her Retained Interests.

84.     Defendants Centrum, Mr. Slaven, and Mr. McLinden breached the terms of the release of Ms. Koberstein in Paragraph 5(b) of the Agreement by their affirmative election to attribute debt to Ms. Koberstein through the entry of a bad debt write-off in the amount of $2,716,031.81 in the December 31, 2010 Centrum general ledger.

85.     Contrary to the express terms of the release in Paragraph 5 of the Agreement, the 2010 bad debt write-off ostensibly asserts a right to payment related to Ms. Koberstein's employment at Centrum and for capital advanced for Ms. Koberstein's membership interests in some or all of the Category A Companies and Category B Companies.

86.     At the time the Agreement was executed, Defendants Centrum, Mr. Slaven, and Mr. McLinden breached the representations and warranties in Paragraph 4 of the Agreement by their failure to disclose to Ms. Koberstein that Centrum fully intended to continue to maintain "Koberstein" accounts in the Centrum general ledgers that on their face identified Ms. Koberstein as ostensibly indebted to Centrum for millions of dollars of capital advances related to all of the Category A Companies and Category B Companies and the Retained Interests, and that would serve as the basis for Centrum bad debt tax write-offs.

87.     The bad debt write-offs that Centrum attributed to Ms. Koberstein provided a means for Ms. Arons to name Ms. Koberstein as a defendant and alleged fraudulent transferee of Centrum assets in the Arons II litigation.

88.     Defendants Centrum, Mr. Slaven, and Mr. McLinden know that the 2010 bad debt write off attributed to Ms. Koberstein relates in large part if not entirely to capital advances made

19

on behalf of Ms. Koberstein with respect to her interests in the Category A Companies and the Category B Companies.

89.     Defendants owed a duty to Ms. Koberstein under the terms of the Agreement not to claim any debt that they attributed to Ms. Koberstein related to her employment at Centrum or her status as a member of the Category A Companies and the Category B Companies.

90.     Ms. Koberstein has been damaged as a result of Defendants' actions in the amount of approximately $423,432.37 for attorneys' fees, costs, and expenses incurred to date defending herself in the Arons II litigation.

91.     Ms. Koberstein's damages arise out of her status as a member of the Category A Companies and the Category B Companies and her employment at Centrum.

WHEREFORE, Ms. Koberstein demands judgment in her favor and against the Defendants on Count I for the following relief:

A.     Damages equal to the full amount of the attorneys' fees, costs, and expenses Ms. Koberstein has incurred defending claims in the Arons II litigation;

B.     Damages equal to the full amount of attorneys' fees, costs, and expenses Ms. Koberstein has incurred to enforce the Agreement;

C.     Pre-judgment interest; and

D.     Such other and further relief as this Court deems equitable, just, and proper.

**COUNT II**
**BREACH OF CONTRACT AS TO AGREEMENT**
**REGARDING MS. KOBERSTEIN'S "RETAINED INTERESTS"**

92.     Ms. Koberstein incorporates by reference paragraphs 1 through 91 of this Complaint as if fully set forth herein.

US.126676893.01

93. The Agreement and Global Assignment executed pursuant thereto are valid and enforceable contracts.

94. Ms. Koberstein has fulfilled all her obligations under the Agreement, including, without limitation, relinquishing her interests in over ninety limited liability companies in which she held membership interests to Defendants Ms. Slaven and McLinden Holdings, and paying all capital calls issued to her with respect to her Retained Interests.

95. Centrum, Mr. Slaven, and Mr. McLinden know the extent to which the 2010 $2,716,031.81 write-off or the 2011 $393,066.70 write-off, or both of them, relate to Ms. Koberstein's Retained Interests.

96. The 2010 and 2011 bad debt write-offs assert a right to payment that is related to Ms. Koberstein's employment at Centrum.

97. Centrum, Mr. Slaven, and Mr. McLinden breached Paragraph 5(b) of the Agreement by their affirmative election to attribute bad debt to Ms. Koberstein that related to Ms. Koberstein's employment at Centrum and to her Retained Interests despite acknowledging under the Agreement that they had no claim against or right to payment from Ms. Koberstein.

98. Centrum, Mr. Slaven, and Mr. McLinden also breached Paragraph 7 of the Agreement through their claim that Ms. Koberstein owed them money for capital related to her Retained Interests.

99. The bad debt write-offs that Centrum attributed to Ms. Koberstein provided a means for Ms. Arons to name Ms. Koberstein as a defendant and alleged fraudulent transferee in the Arons II litigation.

US.126676893.01

100.     Defendants owed a duty to Ms. Koberstein under the terms of the Agreement not to claim any debt attributed to Ms. Koberstein related to her employment at Centrum or the Retained Interests in which she was acknowledged to be a capital contributing member.

101.     Ms. Koberstein has been damaged as a result of these actions in the amount of approximately $423,432.37 for attorneys' fees and expenses incurred to date defending herself in the Arons II litigation.

102.     Ms. Koberstein's damages arise out of claims related to her employment at Centrum.

WHEREFORE, Ms. Koberstein demands judgment in her favor and against the Defendants on Count II for the following relief:

A.     Damages equal to the full amount of the attorneys' fees, costs, and expenses Ms. Koberstein has incurred defending claims in the Arons II litigation;

B.     Damages equal to the full amount of attorneys' fees, costs, and expenses Ms. Koberstein has incurred to enforce the Agreement;

C.     Pre-judgment interest; and

D.     Such other and further relief as this Court deems equitable, just, and proper.

## COUNT III
## BREACH OF CONTRACT
## AS TO AGREEMENT DUTY TO DEFEND

103.     Ms. Koberstein incorporates by reference paragraphs 1 through 102 of this Complaint as if fully set forth herein.

104.     The Agreement and Global Assignment executed pursuant thereto are valid and enforceable contracts.

US.126676893.01

105.    Ms. Koberstein has fulfilled all her obligations under the Agreement and Global Assignment of LLC Interests, including, without limitation, relinquishing her interests in over ninety limited liability companies in which she held membership interests to Defendants Ms. Slaven and McLinden Holdings, and paying all capital calls issued to her with respect to her Retained Interests.

106.    The fraudulent transfer claims that Ms. Arons alleged against Ms. Koberstein in the Arons II litigation fall within the scope of the defense and indemnity provisions of Paragraph 6 of the Agreement because the write-offs that form the basis for the claims relate to Ms. Koberstein's status as a member in the Category A Companies and the Category B Companies.

107.    Defendants Centrum, Mr. Slaven, and Mr. McLinden know the actual extent to which the 2010 write-off relates to Ms. Koberstein's status as a member of the Category A Companies and the Category B Companies.  They also know the extent to which, if at all, the 2011 write-off relates to Ms. Koberstein's status as a member in the Category A Companies and Category B Companies.

108.    The allegations against Ms. Koberstein in Arons II exposed and continue to expose Ms. Koberstein to potential liability on account of her status as a member in the Category A Companies and the Category B Companies.

109.    Defendants have breached the terms of Paragraph 6 of the Agreement through their continual refusal to acknowledge their obligation to indemnify, defend, and hold Ms. Koberstein harmless from and against any loss, liability, damage, cost, or expense  (including  reasonable attorneys' fees  and  litigation  costs) sustained or incurred by Ms. Koberstein arising out of her status as member in the Category A Companies and the Category B Companies, or in any manner

US.126676893.01

relating to the Category A Companies and the Category B Companies and their respective activities and affairs.

110.    Centrum, Mr. Slaven, and Mr. McLinden were direct participants in the decision to take the 2010 and 2011 write-offs that provided a means for Ms. Arons to allege claims against Ms. Koberstein related to her status as a member in the Category A Companies and the Category B Companies.

111.    Defendants' refusal to defend Ms. Koberstein in the Arons II litigation and to reimburse her for attorneys' fees and costs she has incurred to date is a breach of the Agreement and of the covenant of good faith and fair dealing.

112.    Ms. Koberstein has been damaged as a result of these actions in the amount of approximately $423,432.37 for attorneys' fees and expenses incurred to date defending herself in the Arons II litigation.

113.    Ms. Koberstein's damages arise out of her employment at Centrum and Defendants' breach of the terms of Paragraph 6 and other terms of the Agreement.

WHEREFORE, Ms. Koberstein demands judgment in her favor and against the Defendants on Count III for the following relief:

A.    Damages equal to the full amount of the attorneys' fees, costs, and expenses Ms. Koberstein has incurred defending claims in the Arons II litigation;

B.    Damages equal to the full amount of attorneys' fees, costs, and expenses Ms. Koberstein has incurred to enforce the Agreement;

C.    Pre-judgment interest; and

D.    Such other and further relief as this Court deems equitable, just, and proper.

US.126676893.01

## COUNT IV
## DECLARATORY JUDGMENT PURSUANT TO THE
## DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201, AND FED. R. CIV. P. 57

114.    Ms. Koberstein incorporates by reference paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115.    Due to the parties' conflicting interpretation of the Agreement and the significant financial ramifications that flow therefrom, Ms. Koberstein seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Fed. R. Civ. P. 57, to determine the rights and obligations of the parties under the Agreement.

116.    Pursuant to the Declaratory Judgment Act, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 18 U.S.C. § 2201.

117.    An actual controversy exists between the parties regarding whether Paragraph 6 of the Agreement imposes a duty on Defendants to defend Ms. Koberstein, to reimburse her for litigation expenses incurred and to be incurred in Arons II, and to indemnify Ms. Koberstein against any potential judgment in the Arons II litigation.

118.    Ms. Koberstein sought reimbursement and indemnification because the claims against her in the Arons II litigation fall within the scope of the defense and indemnity provisions of Paragraph 6 of the Agreement as they relate to write-offs that are based on Ms. Koberstein's status as a member in the Category A Companies and the Category B Companies.

119.    It is evident from page 99 of the 2010 Centrum general ledger that the 2010 write-off relates to Ms. Koberstein's status as a member in the Category A Companies and Category B Companies.

120.    The allegations against Ms. Koberstein in Arons II expose Ms. Koberstein to liability on account of her status as a member in the Category A Companies and the Category B Companies.

121.    Defendants Centrum, Mr. Slaven, and Mr. McLinden know precisely the extent to which the 2010 write-off relates to Ms. Koberstein's status as a member of the Category A Companies and the Category B. Companies.

122.    Centrum, Mr. Slaven, and Mr. McLinden were active participants in the write-offs that provided a means for Ms. Arons to allege claims against Ms. Koberstein related to her status as a member in the Category A Companies and the Category B Companies, and in particular founded on return of capital and repayment of loans.

123.    However, Defendants have failed and refused to reimburse Ms. Koberstein and have failed and refused to acknowledge their obligation to provide a separate defense and indemnify Ms. Koberstein against any potential judgment in Arons II.  Instead, the Defendants contend that until all appeals in Arons II are exhausted against Mr. Slaven, Mr. Ashkin, Mr. McLinden, Centrum, and Ms. Koberstein, the parties should postpone resolution of the issue of the Defendants' obligation to defend and indemnify Ms. Koberstein and reimburse her for costs and expenses she has incurred to defend herself in Arons II.

124.    Meanwhile, Ms. Koberstein continues to expend her own funds defending against the claims in Arons II and must formulate legal strategy amidst uncertainty based upon the Defendants refusal to honor their obligations under the Agreement.

125.    Given the actual and apparent conflict of interests between Ms. Koberstein and Defendants in Arons II, Ms. Koberstein was entitled to retain her own counsel and properly sought reimbursement and indemnity pursuant to the Agreement.

US.126676893.01

126.    It would be an injustice and breach of the Agreement not to enforce the provisions of Paragraph 6 of the Agreement and allow Defendants to continue to postpone their legal obligations to Ms. Koberstein potentially for years, and force Ms. Koberstein to continue to incur legal costs and expenses to defend herself in Arons II.

127.    Additionally, the Defendants have claimed, and continue to claim, that Ms. Koberstein is not entitled to indemnification because Ms. Arons' alleges that Ms. Koberstein is a fraudulent transferee and thus Ms. Koberstein is accused of wrongdoing.

128.    Defendants know that Ms. Koberstein is an innocent party in the Arons II litigation and has not committed any fraud or wrongdoing.

129.    Defendants know that Ms. Koberstein never had any obligation to repay Centrum for advances Centrum made on her behalf with respect to her LLC interests.

130.    Defendants know that because there was no legitimate debt between Ms. Koberstein and Centrum, the Centrum write-offs transferred nothing of value to Ms. Koberstein and that accordingly, all of the fraudulent transfer allegations Ms. Arons brings against Ms. Koberstein in Arons II are false.  Yet they continue to refuse to defend and indemnify her.

131.    Accordingly, Ms. Koberstein seeks a declaration of her rights under the Agreement, including but not limited to a declaration that (a) the duties to defend and indemnify Ms. Koberstein are valid and enforceable; (b) that any and all loss, liability, damage, cost, or expense (including reasonable attorneys' fees and litigation costs) that Ms. Koberstein has incurred and may continue to incur in the Arons II litigation (and any appeal thereof or other litigation arising therefrom) are related to Ms. Koberstein's status as a member in the Category A Companies and the Category B Companies and are within the scope of the defense and indemnity provisions

in Paragraph 6 of the Agreement; and (c) the Arons II lawsuit falls within the scope of the indemnity provision in the Agreement.

WHEREFORE, Ms. Koberstein requests that this Court enter a declaratory judgment that:

A.     The Agreement is a valid and enforceable contract;

B.     Defendants have a duty to provide a separate defense to and indemnify Ms. Koberstein in the Arons II litigation because the claims against her are related to Ms. Koberstein's status as a member in the Category A Companies and the Category B Companies or relate in some manner to their respective activities and affairs, whensoever arising;

C.     Defendants be compelled to immediately perform their duty to provide a separate defense to Ms. Koberstein in Arons II pursuant to the Agreement and reimburse Ms. Koberstein for all attorneys' fees, costs, and expenses incurred to date plus prejudgment interest, with the continuing obligation to promptly reimburse Ms. Koberstein for all attorneys' fees, costs, and expenses hereafter incurred in the Arons II litigation (including participation in any appeals);

D.     Defendants have the obligation to indemnify Ms. Koberstein for the full amount of any and all judgments entered against her in Arons II because the claims against her relate, in whole or part, to the Category A Companies and the Category B Companies;

E.     Ms. Koberstein is the prevailing party under the Agreement and entitled to collect the attorneys' fees, costs, and expenses incurred seeking reimbursement and a determination of her rights under the Agreement; and

F.     Such other and further relief as this Court deems equitable, just, and proper.

US.126676893.01

Date:  February 7, 2020

Respectfully submitted,

MARY KOBERSTEIN

/s/ *Ryan G. Milligan*
Ryan G. Milligan (#6326290)
PFEIFER MORGAN & STESIAK LLP
53600 N. Ironwood Rd.
South Bend, Indiana 46635
Tel. 574.272.2870
Fax 574-271-4329
RMilligan@pilawyers.com

Colby A. Kingsbury (#6272842)
Joan A. Akalaonu (#6320201)
FAEGRE DRINKER
311 South Wacker Drive, Suite 4400
Chicago, Illinois 60606
Tel.  312.212.6500
Fax. 312.212.6501
Colby.Kingsbury@FaegreDrinker.com
Joan.Akalaonu@FaegreDrinker.com

## JURY DEMAND

The plaintiff demands a trial by jury of any and all issues so triable in the above-captioned matter.

Respectfully submitted,

MARY KOBERSTEIN

/s/ *Ryan G. Milligan*
Ryan Milligan (#6326290)

US.126676893.01